40 C.C.P.A. (Patents)

### Application of DAVIS et al.

**Patent Appeal No. 5955.**

United States Court of Customs and Patent Appeals.

April 15, 1953.

---

[1] That part of R.S. 4888 here involved has been carried forward into § 112, Title 35, U.S.C., 1952.

Barnes, Kisselle, Laughlin & Raisch, Detroit, Mich. (Stuart C. Barnes, Detroit, Mich., and Bacon & Thomas, Washington, D. C., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office (hereinafter referred to as the board) affirming the rejection by the Primary Examiner (hereinafter referred to as the examiner) of all the claims numbered 1 to 8, inclusive, of appellants' application for patent entitled "Means For Preventing Collapse Of Molded Concrete Products When The Core Is Withdrawn."

Claims 1, 2 and 7 are directed to method and the others to the apparatus referred to in claims 3, 4, 5 and 6, as a mold box and in claim 8 as a concrete block molding machine.

Claims 2, 3 and 6 which the board selected as representative, when taken together, cover all the material features of appellants' claimed invention. They read:

"2. The method of preventing the collapse of a hollow block in molding hollow concrete blocks or similar products when the core is rapidly withdrawn and the outer mold stripped simultaneously from the block, which comprises using a hollow core with a vent opening in the top and supplying a metered charge of compressed air at a determined pressure to the hollow interior of the core through the vent opening, said charge of air under pressure calculated so as to substantially equalize the pressure on the outside and inside of the block by correlating the air charge with the speed of withdrawal of the core from the block.

"3. A mold box containing one or more cores and means for preventing the collapse of the hollow molded block when the cores and mold are stripped from the molded block which comprises the said mold box, the said core or cores, and a conduit and passageways through the core or cores for supplying compressed air to the space left by the core or cores in the block as they and the mold are withdrawn.

"6. A mold box containing one or more cores and means for preventing the collapse of the hollow molded block when the cores and mold box are lifted contemporaneously and rapidly leaving the block stripped, which comprises the said mold box, the said core or cores united to the mold box to lift therewith, and a conduit and passageways through the core or cores for supplying compressed air to the space left by the core or cores in the block as they are withdrawn, the air supplied to the space in the block being a charge co-ordinated to the speed of withdrawal of the core from the block so as to keep the pressure on the inside and outside of the block substantially equalized, a cam and cam-controlled valve for opening the supply of air to the space in the block and closing off the supply of air, the amount of opening of the valve being adjustable by means of lost motion between the cam and the valve, and means for actuating the valve adjustable to vary the amount of lost motion and, consequently, the opening of the valve."

The following patents were cited as prior art references: Besser 1,706,647 Mar. 26, 1929; Strong 2,193,847 Mar. 19, 1940; Weaver 2,297,090 Sept. 29, 1942.

As we understand appellants' application, the feature particularly emphasized as constituting their claimed invention is that of equalizing the atmospheric pressure on the outside and inside of the green, freshly molded blocks during the very short period (appellants' brief says "a little more than a half a second") in which the mold and the core are being simultaneously pulled off, or stripped from, the molded block by a described lever arrangement. The atmospheric equalization is accomplished by compressed air introduced into the space left by the core while it is being withdrawn from the block, the force of the compressed air being regulated by a cam arrangement and thus coordinated to the speed of withdrawal of the core from the molded block. The withdrawal of the core tends to create a vacuum in the space within the block from which the core is withdrawn and by filling such space with air, the flow of which is properly regulated, the inner walls of the still plastic cement are prevented from crumbling or deformation.

We quote from the brief on behalf of appellants the following descriptive matter:

"The appealed claims are directed to a method and apparatus for providing metered compressed air to the hollow cores of the molds when the mold box and cores are lifted off the molded blocks. The purpose of the compressed air in a metered charge is for equalizing the pressure on the outside and inside of the freshly molded walls so that they will not be collapsed. The mold box usually contains three molds. Suspended from the top of the mold box are a set of cores which form the hollows in the blocks, * * *. The mold box, the molds and the suspended cores open at their lower ends are set upon a plate called a 'pallet'. Both the molds and the cores are open at their lower ends. The spaces around the cores and in the molds are filled or poured with a concrete mix. The pallet, the mold box, the molds and the cores are then vibrated to pack the material firmly in the molds and around the cores. This material is also, in some machines, tamped by packers that are dropped on the top of the contents of the mold. These are vibrated to do the tamping. After the vibrating and/or tamping operation, the cores, the mold box and the molds are lifted off the molded blocks which rest on the pallet."

Claims 1 to 4, inclusive, and 7 and 8 were rejected as unpatentable over the Strong patent, designated by the board as the basic reference, in view of the Besser patent, and claims 5 and 6 on those references with the addition of the Weaver patent relating to the cam and cam-controlled valve features defined in those two claims.

The Weaver patent "relates to cam mechanisms, more particularly it relates to a delayed action cam mechanism for controlling air valves used in connection with intermittent operating machines * * *."

In a broad sense, both the Besser and Strong patents are in the same field of art as the application of appellants; that is, the manufacture of molded products of concrete or like cementitious materials for use in the construction of buildings. Besser refers most specifically to concrete blocks, "especially those of hollow form". Strong names "units such as wall slabs, floor slabs, roof slabs, etc., for use primarily in building construction." We find no statement in the specification indicating that the slabs are hollow.

The Besser patent which, according to the brief for appellants, is a hand operated apparatus, contains 27 claims all being for a mold or mold box having various features including, as stated in many of the claims, a core about which the plastic material that forms the finished block is molded. When the core is withdrawn a hollow block results. The apparatus for the production of such blocks appears to be the distinctive feature constituting Besser's invention, the patent on which apparently expired several years ago.

The specification recites:

"* * * [The] invention is especially adapted to molding operations in which it is desired to remove the molds away from the finished blocks, and in doing so, remove the cores from the blocks at the same time, and providing means for holding the block down while the mold and cores are removed.

"It is a special object of my invention that the mold box and cores may be removed from hollow blocks without injury to the latter by such removal. To this end, it is my purpose to provide spaced cores which are suspended from means supported by the upper edges of the mold.

"It is a further object of my invention to provide hollow cores having open lower ends and closed upper ends, and supports secured to the closed ends of the cores, so that lifting the supports will raise the several cores."

Other objects are recited which need not be recited here, except that relating to "the arrangement of a small perforation [elsewhere called an 'aperture,' identified in a drawing by the numeral 38 to which reference is hereinafter made] in the upper end of the core to permit entrance of air thereinto or therefrom. A plurality of such perforations 38 may be provided if it is desired."

While the Besser patent teaches simultaneous lifting of the mold and core from the pallet, there is no reference in it to the use of compressed air for equalizing atmospheric pressure or for any other purpose, but it seems to have been the view of the tribunals of the Patent Office that the air entering the perforations in the head of the Besser cores, which perforations are referred to in the decisions below as "vents," constituted an equivalent of appellants' compressed air. The brief of the Solicitor for the Patent Office states:

"* * * to prevent a vacuum, conceded to occur in the prior art when the core was too quickly withdrawn, appellants merely use compressed air, whereas the prior art used a vent, as shown in Besser."

However, it is obvious that the Strong patent was principally relied upon as a reference in connection with the compressed air feature of appellants' combination, and the brief of the Solicitor states:

"But Strong amply suggests * * * the use of compressed air to avoid a vacuum."

The Strong patent is entitled "Method of Producing Molded Concrete Products and Apparatus Therefor." It contains only three claims, two of which are directed to "method" and one to "apparatus." The particular subject matter emphasized by Strong in his specification and distinctly set forth in the claims as his invention, is a "jarring operation" and means for producing such operation whereby there is produced "an exceedingly dense homogeneous surface structure at the particular faces [of the slabs] intended for exposure to weathering or wear * * *."

The following is recited in the specification:

"The method of the invention involves, fundamentally, jarring of the concrete simultaneously with compression thereof within an enclosing forming chamber, whereby the desired physical characteristics are imparted to the resulting product. An important step of the method resides in the conducting of a limited quantity of the plastic cementitious material from confinement during the molding thereof."

The patent nowhere uses the word core nor does it contain anything which indicates that the finished slabs (which the examiner calls blocks) are hollow, but there is disclosed in the specification a "forming cover" provided for cooperation with the mold box during the molding operation and it is said that the forming cover may comprise a *form plate* having its form surface configurated according to the configuration desired for the molded product. The examiner calls the form plate a core, and, in a sense, it may be such but it is different in type from the cores of both Besser and appellants.

The specification states further that "In the present case the form plate is provided

with recesses on its upper surface and is secured to a cover plate in an air-tight manner to produce sealed chambers utilized * * * in connection with the breaking of the vacuum seal between the form surfaces and the yet plastic concrete." It also is said:

"The simultaneous jarring and compression of the plastic concrete in the mold normally produces a vacuum seal between the form surfaces of the form plate and the yet plastic, molded product. To remove the forming cover without damage to the yet plastic product, it is necessary that the vacuum seal be broken.

"For accomplishing break of the vacuum seal, compressed air is advantageously introduced between the surfaces concerned before removal of the forming cover of the mold."

The foregoing is followed by a description of mechanism "for accomplishing introduction of compressed air as afore-described * * *." The operation is a complicated one which need not be described in detail. The sealed chambers above alluded to are utilized and the operation is such that compressed air is introduced between the form surfaces of the forming plate (the latter being the element which the examiner called a core) and the yet plastic, though molded, concrete. By such introduction of compressed air between the structural elements distinctly specified—that is, the surfaces of the form plate and the plastic molded concrete—the vacuum seal between those elements is broken and the plastic product is kept from sticking to the surface of the form plate.

From what has been recited, it seems clear that the subject matter distinctly claimed by appellants as their invention differs in material respects from the subject matter distinctly claimed by Strong and allowed him as his invention, and also from the subject matter distinctly claimed by Besser and allowed him as his invention, and, in our opinion, what appellants claim differs materially from what the cited prior art discloses.

Structurally there is a closer resemblance between the apparatus of appellants and that of Besser than there is between that of appellants and that of Strong, but the feature of regulated or, as expressed in claim 2, supra, and other of the claims, "metered" compressed air is not, so far as we have been able to find, even hinted at in the Besser patent.

It is noted that in the course of its decision the board said:

"* * * Besser shows an example of the simultaneous raising of the box and cores which is persuasive that appellants' device involves only a carrying forward of the concept in a known apparatus. The necessary balancing of pressure to prevent damage is, in both devices, accomplished by the appropriate supplying of compressed air."

Since Besser does not mention compressed air, we assume that the last sentence of the above quotation indicates that the board regarded the air admitted at normal atmospheric pressure into Besser's core through the perforation or aperture 38 (which the tribunals of the Patent Office call a vent) in the top of the core constitutes an equivalent of appellants' compressed air element.

It is said in the brief of the Solicitor for the Patent Office:

"It is obvious that a vent in the core, as in Besser, equalizes the pressure on the inside and the outside of the block."

The specification of the Besser patent states that a stripper member "especially intended for hollow blocks," for assisting the removal of the block from the mold and cores is provided, and that such member includes a supporting plate indicated in a drawing by the numeral 43. Stripper heads are suspended from the plate for use in the operation of lifting the molds and cores, and it is said that the plate is provided "with one or more pins indicated by the numeral 47, which shall be in registration with the aperture 38 (hereinbefore referred to) when the stripper element is deposited on the block."

The result of the foregoing arrangement in the operation of Besser's device is stated as follows:

"* * * As seen in Fig. 5, this pin 47 will enter the aperture 38 when the mold and cores are raised for removing the mold from the block. This provides for opening such aperture each time the block is molded. This avoids deleterious results from the possible creation of a vacuum in the cores when the apertures are filled by accidental deposit of material on the cores."

This described arrangement does not impress us as teaching equalization of pressure on the inside and outside of the block, nor does it disclose the prevention of vacuum formation by means which are equivalent to the compressed air means of appellants.

We regard appellants' compressed, meterized air element as a vital limitation, and, in fact, it must have been so regarded by the tribunals of the Patent Office because the Strong patent was specifically stated by the board to be the basic reference, evidently because of its compressed air disclosure.

From our study of the respective devices of Besser and Strong, we are convinced that they could not be structurally combined so as to produce the subject matter of appellants' apparatus and method claim without radical modifications.

Appellants' device relates to simultaneously stripping molds and cores from a block which is being manufactured and the structural features are arranged in their device to do that for a particular specified purpose, which purpose has to do with atmospheric pressure which vitally affects the finished block. It does not appear that Strong's molds are stripped from the slabs as are appellants' from the block. It is an essential part of appellants' claimed invention that compressed air be applied *during* the stripping operation in order to have coordinating action as to the molds and cores. They claim structure designed to do that, and they also cover that feature in

their method claims. Strong applies compressed air *before* any stripping action of the form plate takes place. Appellants inject compressed air into the core; Strong apparently does not inject compressed air into the form plate but applies it between the surface of that plate and the surface of the plastic molded product, which is being manufactured.

Upon the facts presented and herein related, we are of opinion that appellants should be credited with exercise of the inventive faculty and their claims allowed.

Accordingly, the decision of the board is reversed.

Reversed.